UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

LOUIS LESNIAK

     VS

FEDERAL NATIONAL MORTGAGE ASSOCIATION

<u>COMPLAINT</u>

    Louis Lesniak,  ("Lesniak") complains of Federal National Mortgage Association,  Defendant ("Fannie Mae)  as follows:

1.    Plaintiff is a resident of the State of Rhode Island with an address of 7 Dion Avenue, Coventry, Rhode Island. He inherited said real estate located at 7 Dion Avenue, Coventry, Rhode Island.

2.    Defendant, Federal National Mortgage Association ("Fannie Mae") is a corporation created by an act of Congress.

3.Lesniak executed a promissory note to Providence Postal Federal Credit Union on March 27, 2006.

4.    A copy is attached as Exhibit A.

5.    To secure this promissory note, Lesniak executed a Mortgage to Providence Postal Federal Credit Union on March 27, 2006.

6.    A copy is attached as Exhibit B.

7.     Lesniak has never designated Mortgage Electronic Registration Systems, Inc. ("MERS") as a mortgagee of the mortgage or nominee for the owner of the promissory note.

8.     Exhibit C is a response to Requests for Admissions which Lesniak propounded to Fannie Mae in Rhode Island Superior Court case number KD-2017-0293.

9.     Exhibit "D" is a copy of a purported assignment of mortgage dated March 27, 2006.

10.    Exhibit "E" is a copy of a purported assignment of mortgage dated October 14, 2008.

11.    Exhibit "F" is a copy of a purported assignment of mortgage dated November 29, 2010.

12.    Exhibit "G" is a copy of a purported assignment of mortgage dated June 11, 2009.

13.    Wells Fargo Bank, N.A. was the loan servicer for Lesniak's mortgage loan.

## COUNT I

## DECLARATORY JUDGMENT

14.    Paragraphs 1-13 are incorporated by reference.

15.     Exhibit H and Exhibit I are the only copies of the only purported default letters Lesniak ever received prior to the purported foreclosure of his property.

16.     In Exhibit H and Exhibit I, Fannie Mae through it loan servicer, Wells Fargo, did not provide Lesniak with the accurate amount to cure the purported arrearage on his promissory note.

17.     Exhibit J is Lesniak's periodic statement from Wells Fargo, dated July 27, 2010.

18.     Exhibit J indicates that as of July 27, 2010, Lesniak did not owe any other amount other than past due payments of principal, interest and escrow of $23,406.12.

19.      Exhibit H inaccurately and deceptively indicated that Lesniak was required to pay $23,568.30 of past due payments and $4,776.58 of other fees for a total to cure of $28,344.88.

20.     This letter also inaccurately stated in order to cure, Lesniak would have to pay this amount, plus any additional monthly payments, late charges and other charges that may be due under after the date of this notice and on or before September 15, 2010 in Certified Funds.

21.      Exhibit K is Lesniak's periodic statement from Wells Fargo dated April 5, 2010, which indicates that his overdue payments from December 1, 2008

through April 1, 2010 were $21, 981.70, which does not contain any fees other than unpaid late charges of $758.70.

22.     Lesniak's unpaid principal balance on Exhibit K was $149,624.72, is interest paid year to date was $3,437.6.

23.     As indicated in Exhibit L, the periodic statement dated April 6, 2010, a payment of $1187.00 made by Plaintiff on April 5, 2010 was not applied.

24.      Two other payments, which with the $1187.00 payment totalling $3633.31 were made by Lesniak on April 5, 2010.

25.     On the periodic statement, dated, April 6, 2010, Lesniak's  principal balance was listed as $149,778.29.

26.     Exhibit M is the periodic statement from Wells Fargo dated July 27, 2010, which indicates that the overdue payments from February 1, 2009 through July 1, 2010 were  $23,406.1, the principal balance was $149,314.95 and the interest year to date payments were $5181.21.

27.      However this statement does not contain any fees other than unpaid late charges of $758.70.

28.     Exhibit N is the periodic statement from Wells Fargo dated August 18, 2010, which indicates that the overdue payments from February 1, 2009 through August 1, 2010 were $24,877.65, the principal balance was $149,314.95 and the interest year to date payments were $5181.21

29.     However,  this statement does not contain any fees other than unpaid late charges of $50.58 but does not include the unpaid late fees of $758.70, which were no longer listed as being unpaid.

30.     The August 1, 2010 letter did not strictly comply with the terms of the mortgage or note.

31.     Paragraph 19 of the mortgage states that Lesniak had the right to reinstate after acceleration.

32.     Paragraph 19 of the mortgage required that certain fees and expenses had to be paid only after acceleration in order to reinstate after acceleration:

(a) pay all sums which would be due under the security instrument and the Note as if no acceleration had occurred.

(b) cure any default of any other covenants or agreements

(c) pay all expenses incurred in enforcing the security instrument, including but not limited to reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purposes of protecting Lender's interest in the property and rights under this security instrument;

(d) takes such actions as the Lender may reasonably require to assure that Lender's interest in the Property and

33.     Paragraph 19 of the mortgage indicates that Lesniak's right to reinstate would terminate five days before the sale date.

34.     Paragraph 3 of the promissory note, which Lesniak signed, defined the monthly payment as a payment of principal and interest and that the monthly payment was $1,011.67.

35.     Paragraph 6(B) of the note, stated that if  Lesniak did not make the full amount of the monthly payment of $1,011.67 per month,  he will be in default.

36.     Paragraph 6(C) of the note advised Lesniak that if he is in default, the Note Holder may send him a written notice telling me that if he does not pay the overdue amount by a certain date, the Note Holder may require him to pay immediately the amount of Principal which has not been paid and all the interest that he owes on the note.

37.     Paragraph 6(C) of the note also advised him that the certain date must be at least 30 days after the date on which the notice is mailed to him or delivered by other means.

38.     Paragraph 6(E) of the note also advised Lesniak that only if the Note Holder has required him to pay immediately, would the Note Holder have the right to be paid back by him for all of its costs and expenses in enforcing the note, including payment of legal fees.

39.     Paragraph 10 of the note advised him that the circumstances under which the Note Holder could accelerate the note were described in the mortgage.

40.     Paragraph 10 of the note advised Lesniak that some of the conditions under which he could be required to pay the entire amount due under the note included if the property is sold without the Lender's prior consent.

41.     Paragraph 11 of the note advised Lesniak that if the Lender exercised its right to require Lesniak to pay the entire amount due under the note for any reason,  the Lender shall give him notice of Acceleration, which would provide a period of at least 30 days to pay all sums secured by the security instrument and that after that  period, the Lender may invoke any remedies permitted by the mortgage without further notice of demand.

42.     Paragraph 22 of the mortgage advised Lesniak  that the Lender was required to provide him a notice of default which stated that "failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property".

43.     However the August 1, 2010 letter did not strictly comply with the terms of the mortgage. Instead it deceptively misled Lesniak by stating:

If funds are not received by the above referenced date, we **will proceed with acceleration**

44.     This language did not strictly comply with the terms of the mortgage or the note.

45.     Paragraph 22 of the mortgage advised me that the Lender had to advise him prior to acceleration that:

7

The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale.

46.     Wells Fargo also deceptively told Lesniak in this letter that:

The past due payments on this loan are to be made by September 15, 2010, or it will become necessary for us to accelerate the Mortgage Note and pursue the remedies against the property as provided for in the Mortgage or Deed of Trust.

47.     This letter deceptively did not tell Lesniak that Fannie Mae would exercise the statutory power of sale. Instead it stated:

Once acceleration has occurred, we may take steps to terminate your ownership in the property by a foreclosure proceeding or other action to seize the home or pursue any other remedy permitted under the terms of your mortgage.

48.     Wells Fargo also deceptively stated that Lesniak had been discharged from personal liability for this mortgage loan as a result of a Chapter 7 or Chapter 13 bankruptcy proceeding and that in the event of foreclosure, he would not be personally liable for any part of the debt.

49.     However on August 1, 2010 Lesniak was not discharged from any liability pursuant to a bankruptcy in relation to this mortgage loan.

50.     Lesniak did not receive a Bankruptcy discharge until October 21, 2013 in Bankruptcy Case 09-bk-10206, when he received a discharge pursuant to Chapter 13 of the Bankruptcy Code.

51.     This notice also deceptively told Lesniak that he did not have the unconditional right to bring a court action to assert the non-existence of a default or any other defenses to acceleration and sale.

52.     Instead this letter deceptively told him:

**If foreclosure is initiated**, you will have the right to bring a court action to refute the existence of default or offer any other defense to acceleration you may deem appropriate.

53.     Fannie Mae, through Wells Fargo,  thus deceptively told Lesniak that he could only bring a court action after foreclosure had been initiated, after having told him that foreclosure would occur in a foreclosure proceeding and not by the exercise of the statutory power of sale, by advertising a sale of his home.

54.     This letter also deceptively did not provide him a specific date to cure the default as required by the note and the mortgage.

55.     Instead it deceptively stated that he had to cure the inaccurate amount of $28,344.88 plus any additional monthly payments, late charges and other charges that may be due after the date of this notice and on or before September 15, 2010.

56.     This letter deceptively required Lesniak to pay other than principal and interest and amounts due after August 1, 2010 without providing the thirty days required under the note and the mortgage to reinstate or cure.

57.     This letter also deceptively never mentioned that his property would be sold if he did not pay this inaccurate amount.

58.      Instead this letter deceptively stated that it could pursue the remedies against the property, could seize the property or pursue any unnamed remedies.

59.     Lesniak was confused and did not understand this language as it did not follow the language of the mortgage or note which was not contained in this letter.

60.     This letter also deceptively told Lesniak that:

If you would like to discuss the present condition of this loan, or if we can be of further assistance, please call us.

61.     However , Fannie Mae, through its servicer Wells Fargo, deceptively did not tell Lesniak that the right to reinstate would end five days before the sale.

62.     Fannie Mae, through Wells Fargo sent Lesniak another purported default letter on October 3, 2010, which was identical to the terms of this letter except for the dates and the amounts claimed.

63.     This  October 3, 2010 letter made the same deceptive assertions as the August 1, 2010 letter.

64.     It  also deceptively stated that the to cure Lesniak had to pay $27,486.42 along with fees of $4,791.5 for a total payment of $32,379.16.

65.     However this amount which it claimed was due to cure was not accurate.

66.     However, the August 18, 2010 statement, attached as Exhibit N, the September 20, 2010 statement attached as Exhibit O, the October 20, 2010 statement, attached as Exhibit  P, and the November 18, 2010 statement, attached as Exhibit Q all indicate that there were no other charges due on the mortgage loan account and each indicate that there were no other charges due on the mortgage loan.

67.     Prior to the transmittal to Lesniak of these two purported default letters, Lesniak was provided a Home Affordable Modification Program ("HAMP")Loan Trial Period, effective November 1, 2009 by Wells Fargo as agent and servicer for Fannie Mae.

68.     This modification offer is attached as Exhibit R.

69.     This document was provided to Plaintiff by Fannie Mae in discovery in the Rhode Island Superior Court eviction case.

70.     This HAMP program was derived from the Emergency Economic Stabilization Act, P.L. 110-343, 122 Stat. 3765.

71.     This program included the Troubled Asset Relief Program (TARP), which required the Secretary of the Treasury, among many other duties and powers, to "implement a plan that seeks to maximize assistance for homeowners and ... encourage the servicers of the underlying mortgages ... to take advantage of ... available programs to minimize foreclosures."

72.      This program was described in 12 U.S.C. § 5219(a).

73.     Congress also granted the Secretary the authority to "use loan guarantees and credit enhancements to facilitate loan modifications to prevent avoidable foreclosures."

74.     Pursuant to this authority, in February 2009 the Secretary set aside up to $50 billion of TARP funds to induce lenders to refinance mortgages with more favorable interest rates and thereby allow homeowners to avoid foreclosure.

75.     The Secretary negotiated Servicer Participation Agreements (SPAs) with dozens of home loan servicers, including Wells Fargo.

76.     Under the terms of the SPA Wells Fargo agreed to identify homeowners like Lesniak, who were in default or would likely soon be in default on their mortgage payments, and to modify the loans of those eligible under the program.

77.      In exchange, Wells Fargo like other servicers would receive a $1,000 payment for each permanent modification, along with other incentives.

78.     The SPA, which Wells Fargo signed, stated that Wells Fargo "shall perform the loan modification... described in ... the Program guidelines and procedures issued by the Treasury... and ... any supplemental documentation, instructions, bulletins, letters, directives, or other communications ... issued by the Treasury."

79.     In such supplemental guidelines, Treasury directed servicers to determine each borrower's eligibility for a modification by following what amounted to a three-step process:

a.      First, the borrower had to meet certain threshold requirements, including that the loan originated on or before January 1, 2009; it was secured by the borrower's primary residence; the mortgage payments were more than 31 percent of the borrower's monthly income; and, for a one-unit home, the current unpaid principal balance was no greater than $729,750.

b.      Second, the servicer calculated a modification using a "waterfall" method, applying enumerated changes in a specified order until the borrower's monthly mortgage  payment ratio dropped "as close as possible to 31 percent."

c.      Third, the servicer applied a Net Present Value (NPV) test to assess whether the modified mortgage's value to the servicer would be greater than the return on the mortgage if unmodified. The NPV test is "essentially an accounting calculation to determine whether it is more profitable to modify the loan or allow the loan to go into foreclosure."

d.      If the NPV result was negative — that is, the value of the modified mortgage would be lower than the servicer's expected return after foreclosure — the servicer was not obliged to offer a modification.

e.      If the NPV was positive, however, the Treasury directives said that "the servicer MUST offer the modification." Supplemental Directive 09-01.

80.      A copy of Supplemental Directive 09-01 is attached as Exhibit S. 81.

A copy of the Servicer Participation Agreement which is the form signed by Wells Fargo, is attached as Exhibit S-1.

81.      Lesniak qualified for a  HAMP loan modification.

82.      This modification process itself consisted of two stages.

83.      After Wells Fargo received Lesniak's documents it  decided that he was eligible.

84.      Wells Fargo on behalf of Fannie Mae implemented a Trial Period Plan (TPP) under the new loan repayment terms it formulated and provided that he had to pay $1185.08 for each trial payments.

85.      The trial period under the TPP lasted three or more months, during which time the lender "must service the mortgage loan ... in the same manner as it would service a loan in forbearance." As indicated in Supplemental Directive number 09-01.

86.      During and after the trial period, Lesniak complied with all terms of the TPP Agreement.

87.     Wells Fargo did not request that he submit any additional documents during this time.

88.     Since all Lesniak's representations in his application for the HAMP modification remained true and correct, the servicer had to offer a permanent modification.

89.     Supplemental Directive 09-01 provides "If the borrower complies with the terms and conditions of the Trial Period Plan, the loan modification will become effective on the first day of the month following the trial period....").

90.     Lesniak complied with everything that was requested of him in this modification process.

91.     As a result, the modification was effective and should have been boarded onto the electronic system of record of Wells Fargo.

92.     Pursuant to this Trial Payment Plan for a HAMP modification, Lesniak was required to make three trial payments of $1185.08 for the months of November, 2009,  December, 2009 and January, 2010.

93.     This Trial Modification required him to make three trial payments starting in November 2009 through January, 2010 in order to obtain a HAMP modification.

94.     Wells Fargo received the three trial payments of $1185.08 each on October 29, 2009 for the November, 2009 Trial payment, on November 30, 2009

for the December 2009  Trial Payment and December 3, 2009 for the January 2010 Trial payment.

95.     In addition to these payments, Lesniak made five additional payments to Wells Fargo in compliance with the Trial Payment Plan and in fact made additional payments to Wells Fargo which received the February Trial payment of $1185.08 on January 29, 2010 and applied money, which it had held in suspense and to increase the payment on the account to $1,187.00.

96.     Wells Fargo received the March Trial payment of $1185.08 on March 3, 2010, but increased it with funds held in suspense to  increase the payment on the account to $1187.00.

97.     Wells Fargo received Lesniak's first permanent modification payment of $1185.08 on April 5, 2010, but increased the amount due for this payment by using funds Wells Fargo held in suspense to  increase the payment on the account to $1187.00.

98.  Wells Fargo received Lesniak's second permanent modification payment on April 30, 2010 the May payment of $1185.08 but increased the amount due for this payment by using funds Wells Fargo held in suspense to  increase the payment on the account to $1282.00.

99.     Wells Fargo received Lesniak's third permanent modification payment of $1185.08 on May 31, 2010, but increased the amount due for this

payment by using funds Wells Fargo held in suspense to  increase the payment on the account to $1285.00.

100.   These payments can be confirmed by pages 20-21 of Fannie Mae's Answers to the interrogatories (Interrogatory Number 25),  and attached as Exhibit S-2 in the Superior Court eviction case.

101.   Based on Lesniak's acceptance of and the completion of the HAMP trial modification for three months and an additional five months beyond the trial period, his loan was contractually modified, based on the HAMP program, in which Fannie Mae participated at this time.

102.   However, instead of providing Lesniak with a loan modification and accepting the payments, which he had made for eight consecutive months after receiving the Trial Modification, Wells Fargo instead mailed Lesniak deceptive purported default letters and did not process the final modification paperwork to board it onto its electronic system of record.

103.   Lesniak mailed in all the documents requested by Wells Fargo: his tax return, his bank statements and his  pay stubs as requested before he mailed in the trial payments.

104.   Contrary to the HAMP requirements and the contract that he had with Fannie Mae by his successful completement of his Trial Payment Plan, Wells Fargo indicated by a letter dated June 16, 2010 that it could not provide him a Modification, falsely stating:

**Unfortunately, after carefully reviewing the information you've provided, we are unable to adjust the terms of your mortgage.**
**You have not been approved for a mortgage loan modification because we were unable to get you to a modified payment amount that you could afford per the investor guidelines on your mortgage. At this point, we can only recommend the following options, and request you contact us to discuss them: Short sale - Allows you to sell your home for less than the amount owed on your mortgage. Deed in lieu of foreclosure - Transfers ownership of your home to Wells Fargo Home Mortgage if you cannot sell your home at market value.**

105.   This letter, Exhibit  T, was a false statement and a breach of the contract which he had with Wells Fargo to eliminate the arrearage and provide him the HAMP modification, which at the time provided for a 2% interest rate for the first 5 years of the modification.

106.   By accepting Lesniak's  Trial Payments Fannie Mae agreed to modify his loan as a HAMP modification,  provided that he complied with the offer, which he did.

107.   Lesniak made a payment for July to Wells Fargo in the amount of $1185.05, which was returned to him.

108.   Lesniak then mailed it back to Wells Fargo, which returned the payment again.

109.   Due to the modification offer which Lesniak accepted, the purported default letters which were mailed to him on August 1, 2010 and October 3, 2010 did not strictly comply with the terms of the mortgage by advising him that he was in arrears of the note and had to pay any arrearage.

110.   Fannie Mae indicated in its Second Quarter Credit Supplement, attached as Exhibit  W,  that a Borrower must satisfy the terms of a trial modification plan for a trial period of three or four months before a modification becomes effective.

111.   After receiving the second deceptive letter from Wells Fargo, Lesniak received a Notice of Acceleration from Harmon Law Offices, PC on behalf of Fannie Mae, dated November 22, 2010, attached as Exhibit U.

111.   However Fannie Mae had not yet been assigned the mortgage.

112.   Despite this Wells Fargo indicated that it had been instructed to bring a foreclosure in the name of Federal National Mortgage Association, which had not been assigned the mortgage on this date.

113.   This letter deceptively told Lesniak that he did not have an unconditional right to reinstate the loan.

114.    Instead it stated:

Even thought the note has been accelerated, **you may still have the right to reinstate the loan.** If so, and if you desire to reinstate the loan, you will need to pay an amount of money sufficient to bring the loan fully current.

115.   This language deceptively stated that Lesniak did not definitely have the right to reinstate the loan, instead of telling him that he had the right to reinstate up to five days before the sale.

19

116.    This letter thus did not strictly comply with the terms of the mortgage or the note.

117.    Lesniak never was provided a Notice of Foreclosure Counseling pursuant to R.I.G.L 34-27-3.1 from Fannie Mae, which was assigned the mortgage on November 29, 2010.

118.    This statute states:

## § 34-27-3.1. Foreclosure counseling.

(a) No less than forty-five (45) days prior to initiating any foreclosure of real estate pursuant to subsection 34-27-4(b), the mortgagee shall provide to an individual consumer mortgagor written notice of default and the mortgagee's right to foreclose by first class mail at the address of the real estate and, if different, at the address designated by the mortgagor by written notice to the mortgagee as the mortgagor's address for receipt of notices.

(b) The written notice required by this section shall be in English and Spanish and, provided the same is then available, shall advise the mortgagor of the availability of counseling through HUD-approved mortgage counseling agencies and, the toll-free telephone number and website address maintained to provide information regarding no-cost HUD-approved mortgage counseling agencies in Rhode Island. The written notice may also contain any other information required under federal law. A form of written notice meeting the requirements of this section shall be promulgated by the department of business regulation for use by mortgagees at least thirty (30) days prior to the effective date of this section. Counseling shall be provided at no cost to the mortgagee.

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

(d) As used herein and in this chapter, the term "HUD" means the United States Department of Housing and Urban Development and any successor to such department.

History of Section.
(P.L. 2009, ch. 376, § 1; P.L. 2009, ch. 384, § 1.)

119.   Fannie Mae was the mortgagee which sought to exercise the statutory power of sale pursuant to R.I.G.L 34-27-4(b). by virtue of the Notice of Sale mailed to Lesniak.

120.   Wells Fargo had never sent Lesniak a purported Notice of Sale and had not initiated a foreclosure as mortgagee, in strict compliance with R.I.G.L 34-27-4(b).

121.   Exhibit W-1 is a copy of documents which were mailed to Lesniak by Harmon Law Offices and referenced as Fannie Mae Bates numbering 64-66, in Fannie Mae's Response to a Request for Production in the Superior Court eviction action,  number 24 which requested**:**

Any Notice of foreclosure sale sent to the Defendant pursuant to the terms of the Mortgage:

**RESPONSE:**

Please see documents Bates labeled FM000060-66.

122..  This purported Notice of Sale as indicated by Exhibit W-1, did not contain a Notice pursuant to R.I.G.L 34-27-4(b) which is required to be included in the Notice of Sale. This statute states:

**§ 34-27-4. Publication of notice under power of sale and rights of active military servicemembers.**

(a) Whenever any real estate shall be sold under any power of sale mortgage executed subsequent to May 4, 1911, and the mortgage shall provide for the giving of notice of the sale by publication in some public newspaper at least once a week for three (3) successive weeks before the sale, the first publication of the notice shall be at least twenty-one (21) days before the day of sale, including the day of the first publication in the computation, and the third publication of the notice shall be no fewer than seven (7) days before the original date of sale listed in the advertisement, including the day of the third publication in the computation, and no more than fourteen (14) days before the original date of sale listed in the advertisement. The sale may take place no more than fourteen (14) days from the date on which the third successive notice is published, excluding the day of the third publication in the computation. Provided, however, that if the sale is adjourned as provided in § 34-11-22, and the adjourned sale is held during the same calendar week as the originally scheduled day of sale, no additional advertising is required. Otherwise, publication of the notice of the adjourned sale, together with a notice of the adjournment or adjournments, shall be continued at least once each week commencing with the calendar week following the originally scheduled day of sale; the sale, as so adjourned, shall take place during the same calendar week in which the last notice of the adjourned sale is published, at least one day after the date on which the last notice is published.

(b) Provided, however, that no notice shall be valid or effective unless the mortgagor has been mailed written notice of the time and place of sale by certified mail return receipt requested at the address of the real estate and, if different, at the mortgagor's address listed with the tax assessor's office of the city or town where the real estate is located or any other address mortgagor designates by written notice to mortgagee at his, her, or its last known address, at least twenty (20) days for mortgagors other than individual consumer mortgagors, and at least thirty (30) days for individual consumer mortgagors, days prior to the first publication, including the day of mailing in the computation. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this provision.

(c) **Provided further, that the notice mailed to the mortgagor in accordance with subsection (b) above shall also contain a copy of subsection (d) below (printed in not less than 12 point type) headed by the following notice (printed in not less than 14 point type):** "A servicemember on active duty or deployment or who has recently ceased such duty or deployment has certain rights under subsection 34-27-4(d) of the Rhode Island general laws set out below. To protect your rights if you are such a servicemember, you should give written notice to the servicer of the obligation or the attorney conducting the foreclosure, prior to the

sale, that you are a servicemember on active duty or deployment or who has recently ceased such duty or deployment. This notice may be given on your behalf by your authorized representative. If you have any questions about this notice, you should consult with an attorney." The mortgagee shall include in the foreclosure deed an affidavit of compliance with this provision.

(d) *Foreclosure sales affecting servicemembers.*

(1) The following definitions shall apply to this subsection and to subsection (c):

(i) "Servicemember" means a member of the army, navy, air force, marine corps, or coast guard and members of the national guard or reserves called to active duty.

(ii) "Active duty" has the same meaning as the term is defined in 10 U.S.C. §§ 12301 – 12304. In the case of a member of the national guard, or reserves "active duty" means and includes service under a call to active service authorized by the president or the secretary of defense for a period of time of more than thirty (30) consecutive days under 32 U.S.C. § 502(f), for the purposes of responding to a national emergency declared by the president and supported by federal funds.

(2) This subsection applies only to an obligation on real and related personal property owned by a service member that:

(i) Originated before the period of the servicemember's military service or in the case of a member of the national guard or reserves originated before being called into active duty and for which the servicemember is still obligated; and

(ii) Is secured by a mortgage or other security in the nature of a mortgage.

(3) *Stay of right to foreclose by mortgagee.* Upon receipt of written notice from the mortgagor or mortgagor's authorized representative that the mortgagor is participating in active duty or deployment or that the notice as provided in subsection (c) was received within nine (9) months of completion of active duty or deployment, the mortgagee shall be barred from proceeding with the execution of sale of the property as defined in the notice until such nine (9) month period has lapsed or until the mortgagee obtains court approval in accordance with subdivision (d)(5) below.

(4) *Stay of proceedings and adjustment of obligation.* In the event a mortgagee proceeds with foreclosure of the property during, or within nine (9) months after a servicemember's period of active duty or deployment notwithstanding receipt of notice contemplated by subdivision (d)(3) above, the servicemember or his or her

authorized representative may file a petition against the mortgagee seeking a stay of such foreclosure, after a hearing on such petition, and on its own motion, the court may:

(i) Stay the proceedings for a period of time as justice and equity require; or

(ii) Adjust the obligation as permitted by federal law to preserve the interests of all parties.

(5) *Sale or foreclosure.* A sale, foreclosure or seizure of property for a breach of an obligation of a servicemember who is entitled to the benefits under subsection (d) and who provided the mortgagee with written notice permitted under subdivision (d)(3) shall not be valid if made during, or within nine (9) months after, the period of the servicemember's military service except:

(i) Upon a court order granted before such sale, foreclosure or seizure after hearing on a petition filed by the mortgagee against such servicemember; or

(ii) If made pursuant to an agreement of all parties.

(6) *Penalties.* A mortgagee who knowingly makes or causes to be made a sale, foreclosure or seizure of property that is prohibited by subsection (d)(3) shall be fined the sum of one thousand dollars ($1,000), or imprisoned for not more than one year, or both. The remedies and rights provided hereunder are in addition to and do not preclude any remedy for wrongful conversion otherwise available under law to the person claiming relief under this section, including consequential and punitive damages.

(7) Any petition hereunder shall be commenced by action filed in the superior court for the county in which the property subject to the mortgage or other security in the nature of a mortgage is situated. Any hearing on such petition shall be conducted on an expedited basis following such notice and/or discovery as the court deems proper.

123.   Despite the failure to strictly comply with the terms of the mortgage and the note and this statute, Wells Fargo mailed the purported Notice of Sale on December 3, 2010.

124.   This Notice in addition to not being in strict compliance  with the terms of the note and mortgage and the provisions of R.I.G.L. 34-27-3.1 and 34-27-4 was dated December 3, 2010, less than thirty days after the November 22, 2010 purported Notice of Acceleration.

125.   After the note was purportedly accelerated by letter dated November 22, 2010, the terms of the note and the mortgage required that the mortgagee had to wait thirty days to mail a Notice of Sale.

126.   This letter however was mailed on December 3, 2010, which did not provide Lesniak the full thirty days to reinstate the note.

127.   Fannie Mae was not the mortgagee on November 22, 2010.

128.   Based on its failure to strictly comply with this statute, the terms of the note and the mortgage in the purported default letters and the purported acceleration letter, this foreclosure was void.

129.   Lesniak was not provided all his rights pursuant to the Notice of Foreclosure Counseling Statute and the terms of the note and the mortgage.

130.   On January 26, 2011, Fannie Mae claims to have conducted a foreclosure sale.

131.   Fannie Mae recorded a purported foreclosure deed attached as Exhibit X.

132.   The purported foreclosure deed attached to Plaintiff's complaint does not include an affidavit which indicates that Fannie Mae, the mortgagee which

claims to have exercised the statutory power of sale,  included in the foreclosure deed an affidavit which indicates that it mailed Lesniak  a Notice of Foreclosure Counseling.

133.   In fact no such Notice of Foreclosure Counseling on behalf of mortgagee, Fannie Mae was ever provided to Lesniak.

134.   The provisions of R.I.G.L. 34-27-3.1(c) specifically state:

(c) Failure of the mortgagee to provide notice to the mortgagor as provided herein shall render the foreclosure void, without limitation of the right of the mortgagee thereafter to reexercise its power of sale or other means of foreclosure upon compliance with this section. The mortgagee shall include in the foreclosure deed an affidavit of compliance with this section.

135.   The purported Foreclosure Deed was dated March 21, 2011.

136.   However this deed did not include any affidavit, because the purported affidavit was dated September 29, 2011 after the deed was executed,

137.   This purported affidavit referenced the Wells Fargo Notice of Foreclosure Counseling.

138.   However, R.I.G.L. 34-27-3.1 indicates that before any Notice of Sale mailed to a homeowner, a separate Notice of Foreclosure Counseling was a statutory precondition to the mailing of a Notice of Sale by a mortgagee seeking to exercise the statutory power of sale.

139.   A separate notice of sale had to be mailed by Fannie Mae because it was the mortgagee seeking to mail the Notice of Sale, pursuant to R.I.G.L 34-11-21 and 34-27-4.

140.   Since it never mailed such a Notice of Foreclosure Counseling to Lesniak, the failure to act in strict compliance with this Statute rendered this foreclosure void.

141.   Fannie Mae did not strictly comply with the terms of the note or the mortgage as indicated in this complaint, by its defective  default notices and its defective acceleration notice.

142.   Fannie Mae did not wait the thirty days required by the note and the mortgage before it mailed the Notice of Sale on December 3, 2010.

143.   Fannie Mae, through Wells Fargo, watered down its explanation of Lesniak's right to bring a Court action in the purported  default letters by stating that he could only bring a court action after foreclosure had been commenced.

144   Fannie Mae, through Wells Fargo, watered down its explanation of Lesniak's right to reinstate after acceleration in the Notice of Acceleration, by stating that he **may** have the right to reinstate after acceleration.

145.   This Court has jurisdiction to issue Declaratory Judgments pursuant to the Declaratory Judgment Act, 28 U.S. Code § 2201.

146.   This Court has diversity jurisdiction because Plaintiff and Defendant are residents of different states and because the amount in controversy, namely the value of Plaintiff's property is more than $75,000.00.

147.   This Court also has jurisdiction because Fannie Mae is a United States governmental entity.

148.   As established by the Supreme Court and the First Circuit Court of Appeals, Fannie Mae is a governmental entity.

149.   The Plaintiff is asking this Court, inter alia, to restrain Fannie Mae from taking adverse action on the subject property owned by Lesniak at 7 Dion Avenue, Coventry, Rhode Island.

150.   The provisions of the Declaratory Judgment Act, 28 U.S. Code § 2201 grants the Court jurisdiction to determine certain legal questions relating to the property rights of the Lesniak and Fannie Mae under certain contracts, assignments, powers of attorneys, and deed.

151.   The failure of Fannie Mae to comply with the terms of the mortgage, and note by not mailing  a default notice and acceleration in strict compliance with the terms of the note and the mortgage  and by failure to provide Lesniak a Notice of Foreclosure Counseling rendered this purported foreclosure void.

152.   As a result, the purported deed recorded in the Land Evidence Records of the Town of Coventry in Book 1901 Page 648 should be vacated and rescinded.

153.   This Court has the power to declare that the aforementioned deed to be void and without any effect.

154.   Lesniak has incurred legal fees for the prosecution of this action.

155.   Lesniak asks that the Court issue a Declaratory Judgment that the Defendant did not strictly comply with the terms of the note or mortgage nor with the provisions of R.I.G.L. 34-27-3.1 or R.I.G.L. 34-27-4, resulting in the purported foreclosure being invalid.

Wherefore Plaintiff demands the following relief:

a.     A declaration that the foreclosure sale of the Plaintiff's Property on January 16, 2011 was invalid and void;

b.     A declaration that the foreclosure deed recorded in the Land Evidence Records of the Town of Coventry in Book 1901 Page 648 at 8:59:51 AM is invalid and void;

C.     Order Fannie Mae to pay legal fees for the prosecution of this action

D.      Grant all other just and proper relief.

LOUIS LESNIAK

By  Attorney

January 4, 2022          /s/ John B. Ennis _____
JOHN B. ENNIS, ESQ. #2135
1200 Reservoir Avenue
Cranston, RI 02920
(401) 943-9230
Jbelaw75@gmail.com


## COUNT II

156.   Paragraphs 1-155 are incorporated by reference.

157.    Defendant is seeking to evict Plaintiff from his home in the Rhode Island

Superior Court and the Rhode Island Third Division District Court despite the void

nature of the foreclosure process.

158.    Plaintiff will be irreparably harmed if Defendant's improper exercise

of the statutory power of sale without complying with the terms of the mortgage is

not voided and  Defendant, is allowed to obtain title to Plaintiff's home and is

allowed to evict Plaintiff from his home despite the improper foreclosure sale of

the Plaintiff's home.

159.    Plaintiff has a substantial likelihood of success in the pending action,

would otherwise suffer irreparable harm and can claim the greater hardship in the

absence of an order, which will not disserve the public interest if imposed.

160.    The failure of Fannie Mae to comply with the terms of the

mortgage renders void the alleged foreclosure by Statutory Power of Sale,

without having the contractual ability.

161.    Plaintiff lives in this property, as his sole residence.

162.    Fannie Mae has implemented a modification program referred to as the Streamlined Flex modification.

163.    This Modification program provides that up to 30% of the total obligation due on the mortgage will be deferred for forty years with the remainder of the mortgage balance amortized for forty years at the current interest rate of 3.125%.

164.    This program is available to all mortgagees, including the Plaintiff due to the defective and void nature of the foreclosure.

165.    This modification program paid for by the United States government, through its ownership of this mortgage, through Fannie Mae, will make Fannie Mae whole on this obligation of the Plaintiff.

166.    These facts demonstrate that Plaintiff has a substantial likelihood of success.

167.    Likewise a foreclosure of Plaintiff's property by a party not entitled to foreclose on the property will cause Plaintiff irreparable harm, which hardship is greater than any hardship, which may be claimed by defendant.

169.    Such relief sought by Plaintiff will not disserve the public interest if imposed.

170.    Since there has been no compliance with the terms of the note, the

mortgage and R.I.G.L. 34-27-3.1 any alleged foreclosure is void.

171.    Plaintiff has incurred legal fees and expenses due to the conduct

of the Defendant in not complying with the terms of the note, the  mortgage or

this statute.

  WHEREFORE, Plaintiff demands that this Court:

a.      Declare that all actions of Fannie Mae in attempting to foreclose on
the Plaintiff's property, without complying with the terms of the note,
mortgage and R.I.G.L. 34-27-3.1 are void.

b.      Grant a Preliminary Injunction Restraining and Enjoining
Defendant and any other entity acting on its behalf from taking any action
to evict the Plaintiff from their home at 7 Dion Avenue, Coventry, Rhode
Island pending a hearing on a Permanent  Injunction.

c.      Grant all other just and proper relief.

d.      Award Plaintiff attorney fees for the prosecution of this action
pursuant to R.I.G.L. 9-1-45.


LOUIS LESNIAK

By  Attorney
January 12, 2022                    /s/ John B. Ennis
                                    JOHN B. ENNIS, ESQ. #2135
                                    1200 Reservoir Avenue
                                    Cranston, RI 02920
                                    (401) 943-9230
                                    Jbelaw75@gmail.com